UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | | |
|---|---|---|
| ANTHONY B. CARR, | : | |
|     Petitioner, | : | |
| | : | |
| v. | : | No. 3:19-CV-274-DMB |
| | : | |
| NATHAN CAIN, Mississippi Corrections | : | CAPITAL HABEAS CORPUS |
| Commissioner, and LYNN FITCH, | : | |
| Attorney General, | : | |
|     Respondent. | : | |
| | : | |

## **MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY PROCEEDINGS**

    Petitioner Anthony B. Carr, by and through undersigned counsel, hereby submits this briefing in support of his *Motion to Stay and Abey Proceedings*. Doc. #40.

    Mr. Carr's pending, initial petition consists of exhausted and unexhausted claims, and the "total exhaustion" doctrine reflected in *Rose v. Lundy*, 455 U.S. 509, 520 (1982), and clarified in relation to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in *Rhines v. Weber*, 544 U.S. 269, 278 (2005), necessitates his return to state court before proceeding further in this Court. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (citing *Rose*, recognizing longstanding practice of district courts affording federal petitioners with unexhausted claims "an opportunity to return to state court").

    Further, state successor litigation would require the inclusion of any additional claims needing exhaustion that may be included in an amended petition in this Court pursuant to Fed. R. Civ. P. 15(c)(2).

    As detailed further (*infra*), the three specified claims requiring state court exhaustion were not raised in post-conviction. Claim Nos. 2 and 23 stem from the denial of the right to effective assistance of counsel and thus, before *Shinn* was handed down on May 23, 2022 (*infra*),

1

were amenable to evidentiary development and adjudication in this Court pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). *Infra*.

I.     **ARGUMENT**

In 1982, *Rose* held that the total exhaustion rule dictated the dismissal, without prejudice, of any "mixed" petition, *viz.*, a petition including unexhausted claims along with claims already fairly presented in state court. 455 U.S. at 522.

Accounting for the procedural changes that AEDPA wrought (including the introduction of a one-year statute of limitations, 28 U.S.C. § 2244(d)), *Rhines* adjusted the total exhaustion doctrine enunciated in *Rose* by calling for federal district courts, rather than to dismiss a mixed petition, to stay the given case so that the petitioner may exhaust such claims. After *Rhines*, when "the [given] petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics," denial of a motion to stay rises to an abuse of discretion. 544 U.S. at 278. While the Supreme Court has yet to enunciate a precise definition of good cause for these purposes, the *absence* of good cause is rather plain by this point. *See, e.g., Clements v. Maloney*, 485 F.3d 158, 170 (1st Cir. 2007) (intentional decision not to bring claims does not amount to good cause); *Ellison v. Rogers*, 484 F.3d 658, 662 (3d Cir. 2007), *cert. denied*, 128 S. Ct. 390 (U.S. 2007) (same); *Yeoman v. Pollard*, 875 F.3d 832, 837 (7th Cir. 2017) (misunderstandings of the law do not amount to good cause).

    A.   *Martinez v. Ryan* **Established Exception for Exhaustion of Ineffective Assistance of Counsel Claims.**

For an important category of constitutional claims, *Martinez v. Ryan* altered the

foregoing, otherwise prevailing need for exhaustion. 566 U.S. 1, 12 (2012). *Martinez* established an equitable exception to overcome the procedural default of violations of the Sixth Amendment right to the effective assistance of counsel, newly providing petitioners with federal court means to overcome the default of such a claim by establishing deficient post-conviction representation as cause for the failure to present the given claim in an initial-review collateral proceeding in state court. *Id*.

In the first ten years following *Martinez*, federal district courts could entertain new evidence of Sixth Amendment claims of ineffective assistance of counsel procedurally defaulted in state post-conviction proceedings due to deficient state post-conviction representation. *See, e.g.*, *Canales v. Davis*, 966 F.3d 409, 412 (5th Cir. 2020); *Escamilla v. Stephens*, 749 F.3d 380, 394-95 (5th Cir. 2014) (recognizing *Martinez*'s "exception to *Pinholster*'s [*Cullen v. Pinholster*, 563 U.S. 170 (2011)] rule that bars a federal habeas court from considering evidence not presented to the state habeas court.").

A year after *Martinez*, *Grayson v. State* held that Mississippi law ensured "petitioners who are under a sentence of death do have a right to the effective assistance of [post-conviction] counsel." 118 So.3d 118, 126 (Miss. 2013) (citing *Jackson v. State*, 732 So.2d 187, 191 (Miss. 1999)). While *Martinez* provided an equitable rule for federal petitioners to overcome a state procedural default of a trial counsel ineffectiveness claim based on deficient post-conviction representation, *Grayson* provided means for petitioners to return to state court after having suffered deficient post-conviction representation in relation to *any* claim for relief—not merely trial counsel ineffectiveness (per *Martinez*).

The extensive practice of Mississippi's two federal district courts since *Grayson* reflects perhaps uniform recognition for the capital petitioner's ability to return to state court. The

3

Southern District in *Ronk v. Cain* recently captured this status:

> [Mississippi] law is clear, that no matter how slim his chance of success might be, [a capital petitioner] has the right to raise [an unexhausted] claim in state court. *Grayson*, 118 So.3d at 126. It is not within the province of this Court to pre-judge the issues of [post-conviction counsel] ineffectiveness [the petitioner] raises, and there is no question that the Court cannot consider them until they are decided in state court.

No. 1:19-cv-346-HSO, ECF No. 35 at 2 (S.D. Miss. Feb. 23, 2021). The precedents from Mississippi's two district courts staying federal proceedings for the purpose of successor state litigation are voluminous and demonstrate the firm establishment of this practice in application of *Rhines*. *See, e.g.*, *Ambrose v. Cain*, No. 1:21-cv-302-KHJ, ECF No. 36 (S.D. Miss. Aug. 17, 2022); *Smith v. Fisher*, No. 4:17-cv-87-SA, ECF No. 55 (N.D. Miss. Jan. 2, 2019).[1]

**B.  *Shinn v. Ramirez* Eliminated Evidentiary Process for Ineffective Assistance Claims.**

In recent months, the need for capital petitioners such as Mr. Carr to return to state court while preserving the ability to resume federal litigation has elevated.

On May 23, 2022, the Supreme Court decided *Shinn*, which construed 28 U.S.C. § 2254(e)(2) to foreclose federal evidentiary development pursuant to *Martinez*—whether by a hearing or the introduction, otherwise, of evidence not included in the state-court record—concerning state-court defaulted Sixth Amendment trial counsel claims.142 S. Ct. at 1728. In eliminating evidentiary development in federal court, *Shinn* reaffirmed the longstanding availability of returning to state court for adjudication of an unexhausted claim presented in federal court. *Id.* at 1732-33 (citing *Rose*, 455 U.S. at 520).

---

[1] An incomplete further listing of similar such orders includes: *(Joseph) Brown v. Fisher*, No. 5:12-cv-91-HSO, ECF No. 40 (S.D. Miss. Sep. 2, 2015); *(Xavier) Brown v. Epps*, No. 2:07-cv-49-HTW, ECF No. 55 (S.D. Miss. Mar. 31, 2017); *Underwood v. Epps*, No. 3:06-cv-273-DPJ, ECF No. 83 (S.D. Miss. Sep. 18, 2013); *Le v. Epps*, No. 1:07-cv-1128-LG, ECF No. 52 (S.D. Miss. Jul. 9, 2013); *Jordan v. Epps*, No. 4:06-cv-069-TSL, ECF No. 72 (S.D. Miss. Mar. 21, 2013); *Knox v. Epps*, No. 3:05-cv-360-DPJ, ECF No. 44 (S.D. Miss. Mar. 19, 2013); *Walker v. Epps*, No. 1:97-cv-029-KS, ECF No. 124 (S.D. Miss. Feb. 21, 2013);  *Grayson v. Epps*, No. 1:04-cv-708-CWR, ECF No. 35 (S.D. Miss. May 11, 2012).

In *Shinn*'s immediate wake, numerous district courts have already granted *Rhines* stays.[2] Among these stays are at least two capital cases in which the district court had, before *Shinn*'s determination, clearly anticipated hearing new evidence pursuant to *Martinez*.[3]

In *Ortiz v. Cain,* No. 2:12-cv-02310-JTM-KWR, Docs. 162-1, 163 (E.D. La. Jul. 7, 2022), the district court entered a *Rhines* stay basing good cause on the deficient performance of post-conviction counsel.[4] There, a *Wiggins* claim for failure to adequately investigate and present

---

[2] *E.g.*, *Albarati v. Schiebner,* No. 22-CV-10139, 2022 WL 2161020 (E.D. Mich. June 15, 2022) (good cause for failure to exhaust ineffective assistance of trial counsel stems from deficient performance of appellate counsel when petitioner was pro se for initial state collateral review); *Walker v. Lumpkin,* No. CV H-20-3501, 2022 WL 2239851 (S.D. Tex. June 22, 2022) (pro-se litigant's ignorance of the law was good cause for his failure to exhaust multiple claims); *Gran v. Gastelo,* No. 118-CV-01745-DAD-SAB (HC), 2022 WL 2256422 (E.D. Cal. June 23, 2022) (lack of counsel in state post-conviction is good cause because lack of effective assistance in post-conviction is good cause); *Hearne v. May,* No. CV 22-630 (MN), 2022 WL 2064969 (D. Del. June 8, 2022) (good cause exists when the AEDPA statute of limitations would bar litigation of claims—including defaulted claims of ineffective assistance of trial counsel—that are not plainly meritless after a state successor in the absence of any indication of bad faith dilatory tactics); *Ruoff v. Covello,* No. 22-CV-01207-JST, 2022 WL 2132216 (N.D. Cal. June 14, 2022) (good cause is premised on the lack of assistance of post-conviction counsel, the petitioner's bipolar disorder, and the complexity of the claims involved in his first-degree murder case, when the unexhausted claims do not rule out any hope of prevailing and in the absence of evidence of bad faith delay); *Stein v. Secretary of Florida Dept. of Corr.,* No. 3:09-CV-1162-MMH-PDB, 2022 WL 2452622 (M.D. Fla. July 6, 2022) (state's non-disclosure of impeaching evidence was the basis of good cause for the default because petitioner could not have known of its existence); *Elledge v. Huss,* No. 21-CV-11122, 2022 WL 2308383 (E.D. Mich. June 27, 2022) (stay is appropriate because state law permits raising claims of trial court jurisdictional default in a successor, so there is no default needing to be excused); *Bush v. McGinley*, No. CV 21-2106, 2022 WL 2442731 (E.D. Pa. June 17, 2022), *report and recommendation adopted*, No. CV 21-2106, 2022 WL 2440762 (E.D. Pa. July 5, 2022) (good cause appears premised on new claim of actual innocence predicated on new evidence developed in an unrelated case); *Wright v. Brown*, No. 2:21-cv-10688 2022 WL 2440746 (E.D. Mich. July 5, 2022) (good cause for default of a new claim is predicated on the prosecutor's suppression of evidence only recently obtained from the police through the efforts of a private investigator hired by petitioner).

[3] In *Cowan v. Cates*, No. 1:19-CV-00745-DAD, 2022 WL 2719508, at *13 (E.D. Cal. July 13, 2022), the district court made it very clear that *Martinez* "cause" in the form of ineffective assistance of post-conviction counsel as to claims of ineffective assistance of trial counsel is enough to establish "good cause" for the failure to exhaust state court remedies pursuant to *Rhines*. *Id*. at *20-22. The court further determined the claims are potentially meritorious because they "are at least 'colorable' and not 'hopeless' upon consideration of the state record." *Id*. at *24.

In *Pickens v. Shoop*, No. 1:19-cv-558, 2022 WL 2802411 (S.D. Ohio July 18, 2022), the amended petition was filed in late 2021, and the return in April of 2022. The motion to stay pending state exhaustion of *Brady* claims was filed on May 31, 2022, just a week after *Shinn* was decided.

[4] The order granting the motion comprises just two substantive sentences:
> IT IS ORDERED that the motion is GRANTED, and this federal habeas case is STAYED AND HELD IN ABEYANCE pending resolution of a state successor postconviction petition in which Mr. Ortiz will pursue available state court remedies for his unexhausted federal constitutional claims.
>
> IT IS FURTHER ORDERED that Mr. Ortiz, through counsel, will (a) file his state postconviction application within one hundred eighty days of this Order, subject to extension based upon good

mitigation evidence, plus various *Brady* violations were at stake. *Id.* at 2, 7-8. Post-conviction counsel's deficient performance established the good cause to excuse the default in both sets of claims. *Id*. at 12 ("[F]ederal courts have consistently found that a failure on the part of post-conviction counsel constitutes good cause for failure to exhaust."). Apparently, Ortiz had anticipated presenting newly developed evidence in the federal court prior to *Shinn* and had already secured an order to conduct an evidentiary hearing, which *Shinn*, of course, later precluded. *Id*. at 15. In the *Wiggins* claim, post-conviction counsel "abandon[ed] their investigation of [Mr. Ortiz's] background after having acquired only rudimentary knowledge of his history from a narrow set of sources." *Id*. at 4 (quoting *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (modifications in memo)). The district court in *Ortiz* found no clearcut definition of "plainly meritless," but noted that the Fifth Circuit has repeatedly indicated "a claim is plainly meritless only if it has absolutely no hope of prevailing." *Id*. at 12-13.

In *Chamberlin v. Cain,* No. 2:11-cv-00072-CWR, 2022 WL 216020 (S.D. Miss. June 15, 2022), the Southern District of Mississippi granted a *Rhines* motion after apparently anticipating, before *Shinn* was decided, litigating *Martinez* claims in federal court.[5] In so ruling on the motion, the court commented that *Rhines* provided no definition of "plainly meritless," and discerned a definition gleaned from cases finding claims were plainly meritless: a claim is plainly meritless when there are legal grounds for denying relief that cannot be impacted by any facts. *Id*. at 3-4.

---

cause, and (b) file a Notice of Decision within sixty days of the completion of the state court litigation regarding his post-conviction application, notifying this Court whether relief has been granted or whether this Court should lift the stay and allow the federal action to resume.

*Ortiz v. Cain*, No. 2:12-cv-02310-JTM-KWR, ECF No. 163 (E.D. La. Jul. 7, 2022). Accordingly, the substance is drawn from Mr. Ortiz's memorandum in support of his *Rhines* stay motion. Memorandum in Support of Motion, *Ortiz v. Cain*, No. 2:12-cv-02310-JTM-KWR, ECF No. 162-1 (E.D. La. July 6, 2022).

[5] The court in *Chamberlin* appointed conflict-free counsel to investigate and litigate *Martinez*-available trial counsel ineffective assistance claims because federal habeas counsel had also represented Ms. Chamberlin in state post-conviction. *Chamberlin,* No. 2:11-cv-00072-CWR, 2022 WL 216020, at *2-3. Because appointed conflict-free *Martinez* counsel had to withdraw due to a change in employment, the order further directed Ms. Chamberlin's counsel to seek appointment of counsel in state court. *Id*. at 1, 5.

6

"Chamberlin's ineffectiveness claims will be dependent, at least in part, on the facts . . . ." *Id*. at 4. Finally, although apparently no *Martinez* investigation had been conducted, the district court observed that "[m]uch of the reason for the recent delay is the difficulty in conducting an investigation during the pandemic; a situation that has affected almost all of the cases on this Court's docket." *Id*. at 4.

### II.     MR. CARR'S UNEXHAUSTED CLAIMS

Claim No. 2 regards the ineffective assistance of counsel in litigating Mr. Carr's intellectual disability disorder and his resulting exemption from capital punishment. Doc. #12 at 41-44. In 2004, the Mississippi Supreme Court denied all the claims comprising Mr. Carr's initial post-conviction petition, filed by the newly created Office of Capital Post-Conviction Counsel, *except* whether he was eligible for the death penalty pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), which had been decided a dozen years after his trial. *Carr v. State*, 873 So.2d 991, 1006 (Miss. 2004). Fifteen years of litigation then ensued, culminating in a denial on the merits, *Carr v. State*, 283 So.3d 18 (Miss. 2019), which is the subject of Claim No. 1 at bar (Doc. #12 at 26 *et seq.*). While state counsel presented this *Atkins* claim in an application for post-conviction relief, the claim itself is not a post-conviction challenge to the trial record, rather it is an application of Supreme Court authority establishing that the Eighth Amendment proscribes the intellectually disabled from eligibility for capital punishment.

Upon conclusion of the Mississippi Supreme Court's merits adjudication in 2019, which followed a 2016 reversal and remand of the denial of relief from the Quitman County Circuit Court in 2013, *Carr v. State*, 196 So.3d 926 (Miss. 2016), Mr. Carr timely filed his present federal habeas corpus petition raising the deficient performance of counsel in developing and

7

presenting his intellectual disability in the trial court. The adequacy of that representation, in the end, thus has never been presented in the state court.

Claim No. 4 regards Mr. Carr's factual innocence and innocence of the death penalty. Doc. #12 at 48-9. Other than the foregoing *Atkins* claim, the claims post-conviction counsel submitted to comprise Mr. Carr's single state petition—filed two decades ago and never amended, supplemented, revised, or otherwise augmented during the 15-year pendency of the *Atkins* litigation—failed to adduce his actual innocence, despite a trial record that hinges upon extremely problematic snitch testimony that the snitch promptly recanted, as to the benefit he received for testifying against Mr. Carr, at his own sentencing hearing shortly after Mr. Carr's trial (Doc. #10-3 at 18; Doc. #12 at 46 *et seq.*), in a case where the co-defendant confessed to the murders and received a death sentence (*Simon v. State*, 688 So.2d 791, 798 (1997). Further, while the written findings of the jury to establish the statutorily required aggravating circumstances to impose a death sentence were indecipherable and meaningless (*see* Claim No. 32, *id.* at 128-32), post-conviction counsel failed to investigate and establish the absence of evidence sufficient to have supplied bases for the jury to find, leaving aside *Atkins*, that Mr. Carr was eligible for the death penalty under Mississippi law.

Claim No. 23 concerns the abject failure of post-conviction counsel to develop and present mitigation evidence. *Id.* at 101-04. Mr. Carr's post-conviction petition *did* nominally present a penalty phase ineffectiveness claim. *Carr*, 873 So.2d at 1003 *et seq.* But it comprised only this:

> Carr claims his trial counsel was ineffective because: 1) counsel did not adequately present evidence of his mental retardation; 2) counsel did not begin to prepare for the sentencing phase until guilt had been decided; and 3) counsel failed to make a record of all 'off-the-record' discussions.

*Id.*, ¶ 29. The gravity of trial counsel's failings here are by no means merely a matter of the

inadequate presentation of intellectual disability evidence and the failure to begin preparation for any other evidence until after the guilt verdict, though both elements are substantial deficiencies.[6]

The trial record is bereft of any evidence counsel even engaged Mr. Carr's family, or their client himself, in investigating his life history. Further, the post-conviction record reflects no presentation of findings from mitigation investigation in even a glancing attempt to establish prejudice from trial counsel's lack of investigation.[7] Information concerning Mr. Carr's circumstances and early life experience incidental to his *Atkins* litigation made its way into state court proceedings *after* the filing of his single post-conviction petition (Doc. #12 at 30-33) and suggest some of the subject matter and content available for preparation as evidence in sentencing.[8] But no attempt to develop such evidence in post-conviction is reflected in the record at bar. As set forth above, this Court is unable to entertain evidence outside the state-court record. Materials from post-conviction counsel's files, although currently covered by attorney work product and attorney-client privilege, reflect initial, but undeveloped, steps pointing to the presence of extensive multigenerational mitigating evidence concerning Mr. Carr's life and individual circumstances. These materials may further establish the deficiency of post-conviction counsel's performance from not only the filing of Mr. Carr's only prior state petition but throughout that counsel's representation for an additional 15 years during *Atkins* litigation. In

---

[6] Because evidence of Mr. Carr's intellectual deficits had been submitted in the liability phase, counsel simply called to the stand Mr. Carr's principal, guidance counselor, and the clinical psychologist who testified in the first phase. Doc. #12 at 105. The evidence, however, was plainly superficial and limited and its preparation and presentation were not in keeping with the prevailing standard of care. *See Williams v. Taylor*, 529 U.S. 362 (2000). This specific failing in relation to intellectual disability evidence is a sliver of the totality of evidence available to defense counsel, had they conducted a competent investigation and preparation.

[7] Post-conviction counsel possessed a one-page affidavit from Mr. Carr's siter, Jackie, but failed even to include that with any of its post-trial filings. Doc. #11-3. Ms. Carr averred therein that she had tried numerous times to contact trial counsel but never spoke with the lawyer's office, her family only learned of case developments from the news, and the lawyers never contacted any family members about testifying for him. *See* Doc. #12 at 106 *et seq.*

[8] For instance, Mr. Carr had failed third, seventh, and ninth grades, having dropped out on his second try of ninth grade. *Id.* at 31.

any event, state court is the forum to entertain mitigation evidence that no prior counsel have presented on behalf of Mr. Carr.

Plainly, evidence to be presented in state court will not merely supplement the original penalty phase ineffectiveness claim in Mr. Carr's first state petition (*supra*), it will "fundamentally alter" the former claim, under that heading nearly 20 years ago (posited after apparently no investigation at all), rendering it unexhausted. *Moore v. Quarterman*, 491 F.3d 213, 220 (5th Cir. 2007), *on reh'g en banc*, 533 F.3d 338 (5th Cir. 2008) (quoting *Anderson v. Johnson*, 388 F.3d 382, 386 (5th Cir. 2003)); *see Vasquez v. Hillery*, 474 U.S. 254, 258 (1986) (enunciating, pre-AEDPA and *Shinn,* criterion for a "fundamentally altered" claim that, by introducing more than merely supplemental evidence, renders a prior iteration unexhausted).

### III. CONCLUSION

For the foregoing reasons, Petitioner requests the Court enter an order staying and holding in abeyance this cause to permit (i) Petitioner to file in state court within 30 days a motion for appointment of counsel for post-conviction relief, and (ii) to file a notice of his intent to resume this federal cause by 30 days from the date of entry of the final adjudication of Petitioner's prospective successive litigation in the Mississippi Supreme Court.

Respectfully submitted, this the 29th day of August, 2022.

/s/ *Joseph J. Perkovich*
Joseph J. Perkovich
PHILLIPS BLACK, INC.
PO Box 4544
New York, NY 10163-4544
212.400.1660 (tel.)
j.perkovich@phillipsblack.org

/s/ *Christina M. Seanor*
Christina M. Seanor

BRADLEY ARANT BOULT CUMMINGS, LLP
One Jackson Place
188 East Capitol Street, Suite 1000
PO Box 1789
Jackson, MS 39215-1789
601.948.8000 (tel.)
cseanor@bradley.com

*Counsel for Petitioner, Anthony B. Carr*